UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT
- - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA

*v.*

ARI TEMAN, also known as Sealed
Defendant 1,

   *Defendant-Appellant.*

- - - - - - - - - - - - - - - - - - - - - - - - - x

Docket Nos. 25-332(L), 25-452(Con), 25-543(Con)

AFFIRMATION IN
OPPOSITION TO MOTION

STATE OF NEW YORK    )
COUNTY OF NEW YORK   :  ss.:
SOUTHERN DISTRICT OF NEW YORK )

   JACOB GUTWILLIG, pursuant to Title 28, United States Code, Section 1746, hereby affirms under penalty of perjury:

   1.  I am an Assistant United States Attorney in the Office of Jay Clayton, United States Attorney for the Southern District of New York, and I represent the United States in this case. I respectfully submit this affirmation in opposition to defendant-appellant Ari Teman's motion (App. Dkt. 28, the "Motion") to recuse the Honorable Paul A. Engelmayer, United States District Judge, from *United States v. Teman*, 19 Cr. 696 (PAE), for a stay of the District Court's orders requiring Teman

to return from his previously authorized temporary trip to Israel, and for immediate termination of his three-year term of supervised release.[1]

2.     As set forth in detail below, the able and experienced District Judge in this case has expertly handled a highly difficult and litigious *pro se* supervisee, granting Teman's various requests where they were reasonable but appropriately rejecting the majority of them as entirely unreasonable and unsupported. There is no basis for this Court to second-guess the District Court's reasonable exercise of discretion in supervising this defendant. The Motion and the underlying appeals are entirely without merit.

## STATEMENT OF FACTS

### A. Teman's Conviction, Sentence, and Direct Appeal

3.     Superseding Indictment S2 19 Cr. 696 (PAE) (the "Indictment") was filed on January 3, 2020, in six counts. (Dkt. 55). Counts One and Two charged Teman with bank fraud, in violation of 18 U.S.C. § 1344. Counts Three and Four charged Teman with wire fraud, in violation of 18 U.S.C. § 1343. Counts Five and Six charged Teman with aggravated identity theft, in violation of 18 U.S.C. § 1028A.

---

[1] "App. Dkt." refers to an entry on this Court's docket for lead appeal 25-332(L); and "Dkt." refers to an entry on the District Court's docket for this case. Unless otherwise noted, case quotations omit all internal quotation marks, citations, and previous alterations.

Before trial, the Government informed the District Court and the defense that it had elected not to proceed on Counts Five and Six.

4.      Trial commenced on January 22, 2020, and ended on January 29, 2020, when the jury returned a verdict of guilty on Counts One through Four. (CITE).

5.      On July 28, 2021, Judge Engelmayer sentenced Teman to one year and one day of imprisonment, to be followed by three years' supervised release, and imposed $333,000 in forfeiture, $259,340.32 in restitution, and a $400 mandatory special assessment. (Dkt. 253).

6.      On June 8, 2023, this Court affirmed the judgment by summary order. *See United States v. Teman*, No. 21-1920, 2023 WL 3882974 (2d Cir. June 8, 2023). This Court specifically rejected Teman's claims, among others, that Judge Engelmayer should have recused himself, stating that it could "discern no impropriety in the district court's conduct." *Id.* at *3.

7.      On or about May 28, 2024, Teman was released from imprisonment and began his three-year period of supervised release. (Dkt. 450).

**B. Teman's District Court Motions for Travel and Recusal**

8.      After only a brief period of supervision, Teman sought permission to travel internationally, and the District Court modified Teman's terms of supervised release to permit international travel provided each proposed trip was approved in

advance by both the United States Probation Office and the District Court. (Dkt. 450-53).

9. Pursuant to those procedures, Teman requested authorization for a trip to Israel from September 18, 2024 through November 6, 2024, to which the Government did not object and which the Court granted. (Dkt. 456). Teman thereafter requested authorization to extend his trip, and the District Court granted that request and extended the travel authorization to January 15, 2025. (Dkt. 465).

10. Teman subsequently requested an indefinite extension of his trip to Israel and the conversion of his supervision to "non-reporting" supervision. (Dkt. 471, 478). The Government opposed Teman's request. (Dkt. 474, 479, 483).

11. On January 24, 2025, the District Court again granted Teman an extension of his trip to Israel but ordered Teman to return to the United States by February 28, 2025. (Dkt. 484). As of then, Teman had been in Israel for four-and-a-half months. As the District Court explained, Teman's return to the United States was important to enable the Probation Office to meaningfully supervise him, in particular, with respect to the special condition of supervised release requiring Teman to obtain mental health treatment. (*Id.* at 7). The District Court, however, extended the deadline for Teman's return to enable him to plan his return trip in an orderly fashion. (*Id.* at 9-10).

12.    On January 28, 2025, Teman moved for sanctions and Judge Engelmayer's recusal, recycling claims of judicial misconduct already rejected by this Court in its June 2023 Summary Order affirming Teman's convictions. *See Teman*, 2023 WL 3882974, at *3. In particular, Teman again asserted that Judge Engelmayer should have recused himself because of a purported relationship with one of Teman's prior counsel, Noam Biale, Esq., who briefly represented Teman in approximately November and December 2020. (*See, e.g.*, Dkt. 487).[2]

13.    On January 29, 2025, the District Court denied Teman's motion for sanctions and recusal. (Dkt. 488). In doing so, the District Court stated, "In light of the Circuit's rulings rejecting his claims of prosecutorial and judicial misconduct, Teman's motions as directed to the AUSAs and the Court are not only meritless and duplicative, but frivolous." (*Id.* at 3).

14.    Thereafter, Teman continued to make unfounded motions for Judge Engelmayer's recusal based on increasingly irrational claims and *ad hominem* attacks on the District Court, including references to unrelated civil litigation before Judge Engelmayer. (*E.g.*, Dkt. 496, 497). The District Court again denied Teman's motion for recusal, even indicating that, "at [Judge Engelmayer's] request, the Chief

---

[2] Teman had raised the same claims in his direct appeal. *See United States v. Teman*, No. 21-1920 (2d Cir.) ECF No. 90 at 60-68, 74; ECF No. 109 at 45-47, 49; ECF No. 133 at 30-33. This Court rejected all those claims as baseless. *Teman*, 2023 WL 3882974, at *3 ("There is nothing to Teman's argument that Judge Engelmayer was required to recuse himself.").

5

Judge of this District reviewed Teman's motion to recuse and concurs that there is no valid basis for recusal." (Dkt. 498 at 2).

15.     On February 24, 2025, Teman, again moved for permission to remain in Israel, now arguing that his return to the United States by air would jeopardize his health relating to sinus issues. (Dkt. 502). Teman appended to his motion a brief, conclusory note from Dr. Maurice Budow, who based on public records appears to be an internist based in Israel, averring that, although Teman was "well," the change in air pressure caused by air travel could trigger his chronic sinusitis and cause acute sinusitis, and therefore concluding that Teman should not fly for eight weeks. (Dkt. 502-1). The Government opposed Teman's motion. (Dkt. 506).

16.     On February 27, 2025, the District Court expressed its "firm view" that Teman's proffered medical excuse for not complying with the District Court's Order to return to the United States on the then-applicable deadline of February 28, 2025, was a "pretext." (*See* Dkt. 508, 531). "Every indication," the District Court wrote, "is that Teman is advancing this rationale for not traveling to the United States in a last-ditch effort to avoid return, which he has repeatedly stated he does not wish to do." (Dkt. 508 at 3). The District Court cited numerous factors supporting its conclusion, including that Teman had made no effort at securing travel arrangements, had supplied "a series of frivolous alternative bases why he purportedly could not travel to the United States," and the bare-bones nature of the

6

letter from Dr. Budow evidently obtained by Teman shortly before the deadline on which he was ordered to return to the United States. (Dkt. 508). The District Court also cited the overall case record, which "reveal[ed] a regrettable but persistent pattern of Teman's making demonstrably false and self-serving statements and accusations." (*Id.* at 3-4). For example, in sworn affidavits submitted by Teman's trial counsel in connection with Teman's pending motion in the District Court pursuant to 28 U.S.C. § 2255, trial counsel "refused as factually untrue numerous representations Teman had made to the Court, and had reported an attempt by Teman . . . to arrange for an anonymous call to be placed from a burner phone to the Federal Bureau of Investigation falsely claiming that a juror at his trial engaged in misconduct." (Dkt. 531 (citing Dkt. 489 ¶ 32)).

17.     Nevertheless, the District Court again extended Teman's return date, to March 21, 2025, and directed (i) Teman to provide any additional medical records supporting his claim that it was unsafe for Teman to travel by air, along with records indicating that he had made travel arrangements to return to the United States; and (ii) the Government to obtain an independent medical assessment of Teman's proffered medical records, to render a judgment on whether it was medically safe for Teman to travel by air from Israel to the United States. (Dkt. 531).

18.     In response, Teman filed a one-page letter from Dr. Budow and records of his medical care for an unrelated condition in 2024, while he was incarcerated.

7

(Dkt. 513, 514, 518). Teman also again sought the District Court's recusal, which Judge Engelmayer again denied. (Dkt. 513, 514). Teman did not comply with the District Court's Order to provide underlying medical records and wrote, in part, that he "must remain in Israel until . . . Engelmayer is impeached and this case is dismissed with prejudice." (Dkt. 518 at 2).

19.     Thereafter, at the Government's request so that it could obtain the independent medical evaluation requested by the District Court, the District Court further extended Teman's deadline to return to the United States to April 25, 2025. (*See, e.g.*, Dkt. 522, 524).

### C. The Motion

20.     On April 10, 2025, Teman filed the Motion. Among other claims to which the Government was not directed to respond, Teman seeks Judge Engelmayer's recusal based on the same underlying facts and advancing the same arguments that this Court previously rejected, plus additional baseless attacks on the District Court. (*See* Mot. 4-6). Teman also seeks an emergency stay of the District Court's Order denying Teman's request to indefinitely extend his trip to Israel. (*Id.* at 6). Additionally, Teman asks this Court to terminate his supervised release, arguing that continued supervision is "[v]indictive and [u]nlawful" and argues that the "return orders" "reflect[] retaliation for the impeachment campaign against

[Judge] Engelmayer by law professors, rabbis, congressmen, and the Executive Branch." (*Id.* at 9).

### D. Further Developments Following Filing of the Motion

21.     On April 15, 2025 the Government filed a letter attaching an independent medical evaluation from Dr. Richard Nass, a specialist and otolaryngology and sinus issues. (Dkt. 530). Dr. Nass concluded that the limited medical records Teman had provided do "not allow a definitive answer as to whether Mr. Teman can fly safely at this time." (Dkt. 530, Ex. A). The Government, while making clear its continued view that Teman was "using claims about his medical condition as a pretext to stay in [] Israel and not serve his remaining term of supervised release," stated that it did not wish to jeopardize Teman's health and therefore did not "object to extending the deadline for Teman's return until June 1, 2025, the date by which Teman claims it will be safe for him to fly." (Dkt. 530).

22.     On April 17, 2025, the District Court granted Teman's request to extend his travel authorization to June 1, 2025. (Dkt. 531). In doing so, the Court reiterated its view that "Teman's claim that air travel is medically risky is pretextual" and further noted that "[n]umerous data points support that Teman invoked this in late February as a last-ditch excuse to avoid returning to the United States." (*Id.* at 7). Those included, among other things, "Teman's offer of other bogus rationalizations

for not traveling" and his "well-documented pattern in this case . . . of proffering bogus claims and accusations to suit his self-interest." (*Id.* at 7).

## ARGUMENT

### POINT I

### Judge Engelmayer Properly Declined to Recuse Himself

#### A. Applicable Law

23.    A judge must "disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). Disqualification is also mandatory where the judge "has a personal bias or prejudice concerning a party." *Id.* § 455(b)(1). "The substantive standard for recusal is whether a reasonable person, knowing all the facts, would conclude that the court's impartiality might reasonably be questioned." *Apple v. Jewish Hosp. & Med. Ctr.*, 829 F.2d 326, 333 (2d Cir. 1987); *accord United States v. Bayless*, 201 F.3d 116, 126 (2d Cir. 2000) (describing relevant inquiry as whether "an objective, disinterested observer fully informed of the underlying facts" would "entertain significant doubt that justice would be done absent recusal"). "[J]udicial rulings alone almost never constitute a valid basis for a bias or partiality motion." *Liteky v. United States*, 510 U.S. 540, 555 (1994). "A judge is as much obliged not to recuse himself when it is not called for as he is obliged to when it is." *In re Drexel Burnham Lambert Inc.*, 861 F.2d 1307,

1312 (2d Cir. 1988); *In re Literary Works in Elec. Databases Copyright Litig.*, 509 F.3d 136, 140 (2d Cir. 2007) (same).

24.     A litigant's expression of hostility toward the judge is not a basis for recusal. *See King v. United States*, 576 F.2d 432, 437 (2d Cir. 1978) (litigant's letter "which case aspersions upon the motivations and intent" of District Judge "may very well establish King's feelings toward Judge McMahon, but has no tendency to show the latter's feelings toward King"); *United States v. Wolfson*, 558 F.2d 59, 61, 62 (2d Cir. 1977) (defendant's hostile telegram to District Judge in which he pledged "to do everything to have [the judge] removed from the bench," and a letter to The New York Times accusing Judge of participating in "scheme to frame" him, "only establish[ed] Wolfson's feelings toward Judge Palmieri, not the reverse.").

25.     "Recusal motions are committed to the sound discretion of the district court, and this Court will reverse a decision denying such a motion only for abuse of discretion." *United States v. Locascio*, 473 F.3d 493, 495 (2d Cir. 2007). Because the district judge "is in the best position to appreciate the implications of those matters alleged in a recusal motion," reversal of a decision denying a recusal motion is an "extraordinary remedy" requiring a showing that the district court "indisputably abused its discretion." *In re Drexel Burnham*, 861 F.2d at 1312.

11

**B. Discussion**

26.     Judge Engelmayer acted well within his discretion in declining to recuse himself. First, this Court already reached that conclusion in June 2023, when it rejected the same baseless claims against Judge Engelmayer that Teman has now repackaged and expanded in an effort to avoid returning to the United States as ordered. *See Teman*, 2023 WL 3882974, at *3 (rejecting Teman's claim that recusal was required by District Court's relationship with Mr. Biale, concluding that "the district court did not err in failing to hold a hearing under *United States v. Curcio*, 680 F.2d 881 (2d Cir. 1982), after a post-trial lawyer with an arguable conflict appeared for Teman. The court raised the issue *sua sponte* at the next conference and directed Teman to confer with independent counsel . . . . Because nothing significant transpired in the case between the attorney's appearance and his dismissal, Teman was not prejudiced."); *id.* (rejecting claim that "the district court's memorialization of a brief and inconsequential *ex parte* communication with the government" required recusal). Those rulings are now law of the case. *See United States v. Carr*, 557 F.3d 93, 101-04 (2d Cir. 2009).

27.     Nor do any of the events post-dating this Court's disposition of Teman's direct appeal raise reasonable questions about the District Court's impartiality. Indeed, "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion." *Liteky*, 510 U.S. at 555. No "reasonable person, knowing

12

all the facts, would conclude that [Judge Engelmayer's] impartiality might reasonably be questioned." *Apple*, 829 F.2d at 333. To the contrary, at every step of these proceedings, Judge Engelmayer has been tremendously accommodating of Teman, including—and especially—of Teman's proffered health-related issues. (*E.g.*, Dkt. 425 (directing Government and BOP to facilitate Teman's temporary release from BOP custody to address possible medical issues); *see also* Dkts. 435, 437, 440-42 (addressing Teman's claims of mistreatment while in BOP custody, including purported lack of access to food offerings acceptable for his religious observance)). That has been especially true in connection with Teman's requests to remain in Israel for what the District Court has recognized are likely pretextual reasons. The District Court granted Teman's original request to travel to Israel for a brief visit, without objection from the Government, and has extended that authorization numerous times since then. (*See, e.g.*, Dkt. 465 (extending return date to January 15, 2025); Dkt. 484 (same to February 28, 2025); Dkt. 508 (same to March 21, 2025); Dkt. 522 (same to April 11, 2025); Dkt. 524 (same to April 25, 2025); Dkt. 529 (same to April 29, 2025); Dkt. 531 (same to June 1, 2025)). These extensions were almost all intended to address Teman's purported medical issues, first raised in February 2025, notwithstanding the District Court's reasonable conclusion that those medical issues were pretextual. Nothing about the way the

13

District Court has conducted itself in this regard raises any reasonable concern regarding the appearance of partiality.

28.     Nor do Teman's new arguments regarding articles of impeachment that have been filed against the District Court based on the District Court's rulings in an unrelated case support the District Court's recusal. Teman's claim that he is a possible fact witness is unsupported, entirely speculative, and irrelevant in any event; a vexatious litigant should not be permitted to force the recusal of a judge by complaining about the judge's rulings in his case or otherwise attacking the judge's integrity in another forum. *See generally United States v. Hill*, 622 F. App'x 193, 195 (4th Cir. 2015) (defendant's "attempt[] to file a false lien against the presiding judge (among other federal officials and employees involved in this case) did not necessitate the judge's recusal"); *United States v. Cooley*, 1 F.3d 985, 993-94 (10th Cir. 1993) (noting that party's baseless suits against judge do not require judge's recusal).

29.     Based on the law of the case and any reasonable view of the record, Judge Engelmayer did not abuse his discretion in denying Teman's repeated motions for recusal.

14

## POINT II

## Teman's Motion for a Stay of His Return to the United States Pending Appeal Should Be Denied

### A. Applicable Law

30.     "A stay is not a matter of right, even if irreparable injury might otherwise result." *Nken v. Holder*, 556 U.S. 418, 433 (2009). "It is instead an exercise of judicial discretion, and the propriety of its issue is dependent upon the circumstances of the particular case." *Id*. "The party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion." *Id*. at 433-34.

31.     This Court considers four factors in deciding whether to grant a stay of an order pending appeal:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*United States v. Grote*, 961 F.3d 105, 122-23 (2d Cir. 2020). The first two factors are the "most critical." *Nken*, 556 U.S. at 434. With respect to the first factor, "[i]t is not enough that the chance of success on the merits be better than negligible." *Id*. And "simply showing some possibility of irreparable injury fails to satisfy the second factor." *Id*. at 434-35. The third and fourth "factors merge when the

15

Government is the opposing party." *Id*. at 435. "The degree to which a factor must be present varies with the strength of the others; more of one factor excuses less of the other." *S.E.C. v. Daspin*, 557 F. App'x 46, 48 (2d Cir. 2014).

### B. Discussion

32.     Teman's motion for a stay should be denied. Teman has entirely failed to demonstrate any likelihood of success on the merits, nor has he demonstrated that he will suffer irreparable harm if he must return to the United States from this temporary trip to Israel to serve the remainder of his term of supervised release, especially now that the District Court has granted a final extension of his return date to June. The *Nken* factors weigh conclusively against issuance of any stay here—particularly when Teman's claims are viewed in light of the District Court's observation that the record reveals "a regrettable but persistent pattern of Teman's making demonstrably false and self-serving statements and accusations." (Dkt. 508 at 3-4).

33.     First, Teman has no likelihood of success on appeal. He argues that his appeals from the District Court's various supervision orders are likely to succeed on the merits because of "[t]he impeachment proceedings, [Judge] Engelmayer's conflicts, ignored arguments, and ignored religious rights order . . . ." (Mot. at 6). For the reasons set forth above, the recusal arguments are in large part barred by law of the case and are, in any event, entirely without merit. Insofar as the appeals

16

challenge the District Court's decision not to further extend Teman's travel authorization, this Court reviews that decision under a deferential abuse-of-discretion standard. *See United States v. Parisi*, 821 F.3d 343, 347 (2d Cir. 2016) (decisions on modification of terms of supervised release under 18 U.S.C. § 3583(e) are reviewed for abuse of discretion).

34.     The District Court did not abuse that discretion here. The District Court has provided well-founded reasons for requiring Teman to return to the United States to complete his term of supervised release—essentially the same sentencing analysis under 18 U.S.C. § 3553(a) that justified the original imposition of a three-year term of supervised release. The District Court sentenced Teman to a substantially below-Guidelines sentence of one year and one day of imprisonment, and "ordered Teman to serve a three-year supervised release term, which the [District] Court intended as a meaningful component of Teman's overall sentence." (Dkt. 456). As the District Court explained, "Teman's presence in Israel inhibits the Probation Department's practical ability to supervise him." (*Id.*). Supervision "can help reintegrate the offender into free society, including by making available the Probation Department's resources, such as access to therapeutic and other programs," "can advance other penal interests including deterrence and public protection," and "can serve as a mechanism to support and enforce special conditions of supervised release keyed to the individual defendant's needs." (Dkt. 484 at 5-6). *See United States v. Johnson*,

529 U.S. 53, 59 (2000) ("Congress intended supervised release to assist individuals in their transition to community life. Supervised release fulfills rehabilitative ends, distinct from those served by incarceration."); *United States v. Brooks*, 889 F.3d 95, 99 (2d Cir. 2018) (same); *United States v. Balon*, 384 F.3d 38, 41 n.1 (2d Cir. 2004) (noting that "the dual major purposes" of supervised release are "rehabilitation of the offender and enhancement of public safety").

35.    At Teman's July 2021 sentencing hearing, Judge Engelmayer carefully detailed the reasons for Teman's sentence and explained the purpose of each component. (Dkt. 244 at 64-96). In particular, Judge Engelmayer imposed a special condition of supervision requiring Teman to participate in outpatient mental health treatment and an anger management program (Dkt. 253), because Teman's crimes had arisen from his "disproportionate rage, a vendetta, an animus towards these three customers, essentially, because they were dissatisfied with your product and your work." (Dkt. 244 at 72; *see also id.* ("[T]he level of venom, hate, and zeal to retaliate that you displayed toward [the victims] is distressing. . . . [T]he venom . . . and lack of proportion appears to persist well after trial."); *see also* Dkt. 484 at 5-8 (summarizing District Court's reasons for imposing this special condition of supervised release). The District Court also noted Teman's lack of remorse and concluded that "Teman's presence in the United States is necessary to his effective supervision." (Dkt. 484 at 7). This would "help enable the Probation Department to

18

determine whether Teman has resolved the anger, self-control, and retributive impulses that brought about his offenses." (*Id.*). Through filings and communications well after trial, Teman continued to exhibit those behaviors—which in turn caused the Probation Office to withdraw its prior willingness to remotely supervise Teman and instead concur in the need for his return to the United States. (*See* Dkt. 474, 475, 479, 480).

36.     Inasmuch as Teman argues that Judge Engelmayer abused his discretion by not adequately accounting for Teman's claims that his faith requires him to remain in Israel, that argument fails as well. Teman was not constrained to live in Israel when he committed his fraud offenses in the United States. In his initial request to travel to Israel, made in September 2024, Teman cited "the upcoming Jewish holidays and to be with his mother, who is recovering from surgery." (Dkt. 455). Thereafter, in November 2024—with those holidays having passed—Teman sought to extend his stay in Israel based principally on the medical needs of Mr. Teman (different from the ones underlying the present Motion), those of his parents, and also to further his volunteer work, along with the impact of the ongoing war on travel logistics. (Dkt. 463). Teman did not cite religious-based reasons as ones compelling him to remain in Israel. It was only later, after the Court had denied Teman's request to remain in Israel indefinitely, that he began employing religion as a rationale compelling him to stay in Israel permanently. Teman's primary

rationale for traveling to Israel—to care for his parents—is consistent with an earlier application in this case. In April 2023, with Teman released on bail while his direct appeal was pending, the Court authorized Teman to travel to Israel to see his mother before she underwent surgery. (Dkt. 362). Teman traveled to Israel and returned to the United States. In short, Teman's claims that his religion requires him to remain in Israel, and that Judge Engelmayer abused his discretion by not taking those into account, is belied by the record and Teman's own history in this case.

37. Accordingly, the record confirms that there was no abuse of discretion in the District Court's decision to no longer repeatedly extend Teman's travel authorization to Israel and to require him to return to the United States to serve the balance of the supervised release component of his sentence. There is no likelihood of Teman succeeding on the merits of his appeals of the District Court's reasonable supervision orders.

38. Second, Teman has entirely failed to demonstrate irreparable injury. The District Court repeatedly extended Teman's deadline to return from Israel to accommodate for, among other issues, Teman's medical well-being, his physical safety, logistics and scheduling, and travel costs. Teman initially requested to travel to Israel from September through November 2024. The deadline for his return has since been extended by more than six months. Particularly after the District Court's recent final extension of his return date to June to accommodate his claimed (but

20

clearly pretextual) medical issues, the only ostensible harm to Teman from returning to the United States is inconvenience and travel costs, which posed no issue in his initial travel to Israel and which do not constitute sufficient irreparable harm to justify staying the District Court's reasonable orders.

31.     Finally, a stay would not serve the public interest. Teman argues that "[u]pholding judicial integrity amid impeachment proceedings and enabling the Sunflower Centers [a charitable organization Teman has created] to aid trauma victims aligns with public welfare . . . ." (Mot. 6). As to the former, this Court has already rejected any claim that Judge Engelmayer engaged in any improper conduct or needs to recuse, and nothing that has occurred since that determination requires recusal as described above. As to the latter, Teman's proffered humanitarian and charity work is admirable, but it does not overcome the significant countervailing factors warranting his return from this temporary trip to serve the balance of his sentence. As Judge Engelmayer has explained, the public interest weighs in favor of Teman returning to the United States to ensure Teman receives supervision and support from the Probation Office to address his evident continuing anger and self-control issues, both for his own rehabilitative benefit and to protect the public from future criminal conduct by Teman. There is also a strong interest in upholding the integrity of the judicial proceedings by sending a clear message that criminal defendants must serve their sentences and cannot use pretext and baseless claims of

misconduct to prevent the District Court from effectively supervising execution of that sentence. Moreover, Teman's apparent bait-and-switch by asking for permission for a three-month international trip less than six months into his three-year term of supervised release, only to change gear and claim he cannot return to the United States for a host of rotating and pretextual reasons, should not be countenanced and reveals that—as Judge Engelmayer has concluded—Teman merely seeks to avoid serving his sentence. This Court should decline to stay Judge Engelmayer's reasonable supervisory orders.

## POINT III

### Teman's Term of Supervised Release Should Not Be Terminated

32.      Finally, there is no legal basis for this Court to order early termination of Teman's sentence of supervised release. There is no mechanism for this Court to modify a term of supervised release in the first instance. Pursuant to 18 U.S.C. § 3583, requests for early termination of supervised release must be made to the district court, which assesses whether such action "is warranted by the conduct of the defendant released and the interests of justice." 18 U.S.C. § 3583(e)(1). The denial of such a request is an appealable order that this Court would review deferentially for abuse of discretion. *See United States v. Torres*, No. 21-2511, 2022 WL 17087048, at *3 (2d Cir. Nov. 21, 2022) (summary order). Even construing Teman's various District Court filings as constituting a request for early termination

of supervision, for the same reasons set forth above, the District Court's orders continuing that supervision and requiring Teman to return to the United States for that purpose were not an abuse of discretion.

## CONCLUSION

33.     For the foregoing reasons, Teman's Motion should be denied.[3]

Dated:      New York, New York
            April 25, 2025

                                    Respectfully submitted,

                                    JAY CLAYTON
                                    United States Attorney

                        By:     /s/ Jacob H. Gutwillig
                                Jacob H. Gutwillig
                                Assistant United States Attorney
                                (212) 637-2215

---

[3] Although the Government has not formally moved to dismiss these appeals, this Court may wish to consider whether its review of the Motion sufficiently reveals that these appeals from the District Court's supervision orders lack an arguable basis in law or fact to justify *sua sponte* dismissal.

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g), the undersigned counsel hereby certifies that this opposition complies with the type-volume limitation of the Federal Rules of Appellate Procedure. As measured by the word processing system used to prepare this opposition, there are 5,142 words in this opposition.

JAY CLAYTON
United States Attorney for the
Southern District of New York

By: _____/s/_____
JACOB GUTWILLIG
Assistant United States Attorney
(212) 637-2215

# UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

CAPTION:

United States of America

**CERTIFICATE OF SERVICE***

v.

Docket Number: 25-332, 25-452, 25-543

Ari Teman

I, Jacob Gutwillig _____, hereby certify under penalty of perjury that
        (print name)

on April 25, 2025 _____, I served a copy of the Government's motion opposition
        (date)

_____

(list all documents)

by (select all applicable)**

___ Personal Delivery          ___ United States Mail          **X** Federal Express or other
                                                                Overnight Courier

___ Commercial Carrier          ___ E-Mail (on consent)

on the following parties:

| Name | Address | City | State | Zip Code |
|------|---------|------|-------|----------|
| Ari Teman | Apt. 3, Migdal Halevanon 26 | Modiin | Israel | 7175829 |
| Name | Address | City | State | Zip Code |
| Name | Address | City | State | Zip Code |
| Name | Address | City | State | Zip Code |

*A party must serve a copy of each paper on the other parties, or their counsel, to the appeal or proceeding. The Court will reject papers for filing if a certificate of service is not simultaneously filed.

**If different methods of service have been used on different parties, please complete a separate certificate of service for each party.

4/25/25                          /s/ Jacob Gutwillig
_____          _____
Today's Date                      Signature

Certificate of Service Form (Last Revised 12/2015)